UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------

UNITED STATES OF AMERICA,

-v-

TEIMURAZ TAVBERIDZE,

        Defendant.

---------------------------------------

23-cr-585 (JSR)

OPINION AND ORDER

JED S. RAKOFF, U.S.D.J.:

    Teimuraz Tavberidze was indicted on one count of conspiracy to commit Hobbs Act extortion and one substantive Hobbs Act extortion count under 18 U.S.C. § 1951(a). Tavberidze has now moved to disqualify Government counsel, contending that because the two Assistant U.S. Attorneys ("AUSAs") on this case reviewed an ex parte order of the Court endorsed on an ex parte letter to the Court from defense counsel, the AUSAs must be recused from the case. As explained below, the Court hereby denies the motion because Tavberidze has neither demonstrated an ethical violation by the Government nor shown how any putative violation would prejudice him at trial.

I.   Factual and Procedural Background

    On November 8, 2023, Teimuraz Tavberidze was indicted on one count of conspiracy to commit Hobbs Act extortion and one count of Hobbs Act extortion. ECF No. 1. The indictment alleges that Tavberidze and his co-defendants conspired to, and did, "induce[]

1


a victim to make monetary payments through the use of threatened force and fear." Id. at 1-2.[1]

During Tavberidze's arrest on November 14, 2023, the Government seized a Motorola cellphone belonging to Tavberidze (the "Cellphone"). Two days later, the Government notified Tavberidze's counsel, Richard Palma, Esq., that the Government had not searched the Cellphone and intended to return it to the defendant. ECF No. 29 ("Opp."), at 1. Palma, however, did not follow up with the Government regarding the Cellphone until March 12, 2024. Id. at 1 n.1. On March 20, 2024, the Cellphone was delivered to Mr. Palma's office. Id. Meanwhile, Tavberidze was detained and held at the Metropolitan Detention Center ("MDC") in Brooklyn.

On April 18, 2024, the Court received an ex parte letter (the "Letter") from Mr. Palma, asking the Court to "authoriz[e] the defense team to enter the MDC-Brooklyn with [the] Motorola cell phone on a continuing basis to review with [Tavberidze] in preparation for trial." ECF No. 24 (the "Order").[2] The Letter explained that Tavberidze believed the contents of the Cellphone

---

[1] One of Tavberidze's co-defendants, Vazha Gabadadze, has since pleaded guilty to the substantive extortion count. See ECF No. 31.

[2] The Letter was properly sent ex parte under 18 U.S.C. § 3006A(e)(1), which allows defense "[c]ounsel for a person who is financially unable to obtain investigative, expert, or other services necessary for adequate representation" to request such services "in an ex parte application."

included potentially exculpatory text message exchanges with the alleged victim, but because neither Mr. Palma nor his investigator speak Georgian, Mr. Palma needed to review the Cellphone's contents with Tavberidze himself. Based on those representations, the Court endorsed the Letter as an ex parte order (the "Order"). See ECF No. 24.

Mr. Palma sent the Order via email (the "Email") to the MDC, where Tavberidze is detained. See ECF No. 28 ("Mot."), at 4. A Bureau of Prisons supervisory attorney at the MDC, Sophia Papapetru, then sent the Email containing the Letter and Order to the Chief of the Criminal Division of the U.S. Attorney's Office, stating that the MDC could not comply with the Order because of security concerns. Opp. at 2. The Chief of the Criminal Division in turn forwarded the Email to the assigned AUSAs, Chelsea L. Scism and Varun Anand Gumaste. Id. Concurrently, Papapetru also forwarded the Email to one of the assigned AUSAs, who then forwarded the Email to the other assigned AUSA. Id. AUSAS Scism and Gumaste read the Email, including the attached Letter and Order, and discussed the MDC's concerns with Papapetru. Id.

Shortly after their discussion with Papapetru, the AUSAs notified Palma of their receipt of the Letter and Order and relayed the MDC's concerns. Id. The AUSAs proposed to Palma that, rather than bring the Cellphone itself to the MDC, Palma could extract the Cellphone's data onto a laptop, which the MDC would permit to

3

be brought into the facility. Alternatively, the Government offered to "facilitate the production of Tavberidze to the courthouse at 500 Pearl Street where Mr. Palma could review the Cellphone with his client outside of the MDC." Id. at 3 n.5. Ultimately, the parties agreed on the former proposal. Id. at 3.

On April 19, 2024, the parties convened a conference call with the Court not only to convey the parties' aforementioned proposal, but also to discuss Palma's concern that the AUSAs improperly reviewed the Letter and Order. Mot. at 5. The Court approved the parties' joint proposal and the AUSAs further agreed not to interview the alleged extortion victim before the defense could review the contents of the Cellphone. Id. As for Palma's separate concern, the Court instructed the Government to delete any copy it held of the Letter and Order and granted Palma leave to seek appropriate relief after reviewing the contents of the Cellphone. Opp. at 3. On April 24, 2024, Palma met with the U.S. Attorney's Office's Professional Responsibility Officer, Karl Metzner, to discuss Palma's allegations of supposed misconduct by the assigned AUSAs in reviewing the ex parte Letter and Order. Id. at 6. Mr. Metzner's view was that the assigned AUSAs had not acted improperly by reviewing the Letter and Order and that Palma himself could have taken additional precautions to avoid disclosure of the

contents of the Letter and Order, such as by redacting portions of the Letter before sending the Order to the MDC. Mot. at 6.[3]

On April 29, 2024, Tavberidze moved to disqualify the assigned AUSAs from this case or, in the alternative, to hold an evidentiary hearing to determine why the AUSAs reviewed the Letter and Order that were clearly marked "ex parte." ECF No. 26. The Government filed an opposition on May 14, 2024, ECF No. 29, and Tavberidze filed a reply on May 21, 2024. ECF No. 30 ("Reply").

II. Discussion

Tavberidze argues that disqualifying Government counsel is necessary because reviewing an ex parte order is ethically inappropriate. He contends that such review has at least an appearance of impropriety, which he argues is enough to warrant disqualification of the assigned AUSAs. Mot. at 13. Tavberidze further argues that the burden is on the Government to disprove such alleged problems. Id. at 12. The Government responds that Tavberidze instead bears the burden and that he must show not mere impropriety, but actual prejudice. Opp. at 5-6.

---

[3] Notwithstanding Mr. Metzner's suggestion, it is doubtful Mr. Palma had authority to redact, without permission of the Court, a letter that had been so-ordered by the Court.

5

A. <u>Legal Standard</u>

"The authority of federal courts to disqualify attorneys derives from their inherent power to preserve the integrity of the adversary process." <u>United States v. Prevezon Holdings Ltd.</u>, 839 F.3d 227, 241 (2d Cir. 2016).[4] "Because courts must guard against the tactical use of motions to disqualify counsel, they are subject to fairly strict scrutiny." <u>Murray v. Metro. Life Ins. Co.</u>, 583 F.3d 173, 178 (2d Cir. 2009). As a threshold matter, "the moving defendan[t] bear[s] the heavy burden of proving facts required for disqualification." <u>Evans v. Artek Sys. Corp.</u>, 715 F.2d 788, 794 (2d Cir. 1983). "[D]isqualification is called for only where an attorney's conduct tends to taint the underlying trial, because federal and state disciplinary mechanisms suffice for other ethical violations." <u>Prevezon Holdings</u>, 839 F.3d at 241; see also <u>Glueck v. Jonathan Logan, Inc.</u>, 653 F.2d 746, 748 (2d Cir. 1981) ("[S]uch relief should ordinarily be granted only when a violation . . . poses a significant risk of trial taint.").[5]

---

[4] Here and elsewhere, internal alterations, citations, and quotation marks have been omitted unless otherwise indicated.

[5] Cases involving defense motions for disqualification of opposing counsel tend to arise in the civil, rather than criminal, context. See, e.g., <u>GateGuard, Inc. v. Goldmont Realty Corp.</u>, 641 F. Supp. 3d 66, 69 (S.D.N.Y. 2022) (citing cases). Indeed, the parties do not identify a single case involving an analogous motion by a criminal defendant to disqualify specific Government counsel. Although the Government cites one case in which a criminal defendant sought to disqualify the Government, the defendant in that case sought to disqualify the entire Department of Justice or

B. Analysis

"[W]hen there is no claim that the trial will be tainted, appearance of impropriety is simply too slender a reed on which to rest a disqualification order except in the rarest cases." Bd. of Educ. of New York v. Nyquist, 590 F.2d 1241, 1247 (2d Cir. 1979). Even assuming arguendo that the assigned AUSAs committed an ethical violation by reviewing the Letter and Order, Tavberidze does not even attempt to articulate some resulting "risk of trial taint," let alone a "significant risk." Glueck, 653 F.2d at 748. Indeed, Tavberidze's papers provide no explanation at all of how the Government's review of the Letter and Order may have prejudiced him, and the Court cannot perceive why this would be so. Therefore, even though the parties dispute whether the AUSAs' review of the Letter and Order was unethical behavior, that disagreement is immaterial because Tavberidze has identified no resulting prejudice.[6]

---

at least the entirety of a particular U.S. Attorney's Office because of a purported conflict of interest. See United States v. Hasarafally, 529 F.3d 125, 128-29 (2d Cir. 2008). In that case, the Second Circuit had no occasion to opine on the standard for disqualifying individual AUSAs because the individual having the alleged conflict of interest had already recused himself. Id. at 127-29.

[6] In addition to seeking disqualification or an evidentiary hearing, Tavberidze asks the Court to order the Government to "refrain from discussing the contents of the . . . Order with the victim and any potential successors until the Court has adjudicated this motion." Mot. at 7. The Government has agreed to so refrain. Opp. at 4 n.8.

7

That said, Tavberidze has likewise failed to demonstrate that the assigned AUSAs violated an ethical obligation. Tavberidze cites various regulations and standards that broadly require federal employees to act with integrity, abide by ethical standards, and avoid creating an appearance of impropriety. Mot. at 7-9 (quoting, for example, 5 CFR § 2635.101 and 28 C.F.R. § 76.31(a)). Tavberidze argues, based on those general principles, that the assigned AUSAs should have understood that it was improper to review an order of the Court that had been designated as "ex parte." Id. at 10-11.

As the Government points out, however, the fact than an order was *issued* ex parte does not necessarily mean it is forever secreted from opposing counsel. Opp. at 5 (providing "examples when applications are made ex parte, but a subsequent order is made available to an adverse party that was not privy to the application, including search warrants, temporary restraining orders, and certain Rule 17 subpoenas"). And here, the reason the assigned AUSAs reviewed the Order is that the MDC sent the Order to them and asked to discuss a safety concern, not because the AUSAs were snooping for strategic or self-serving reasons. In an ideal world, the assigned AUSAs, after seeing the words "Ex Parte" at the top of the Letter and Order, would have stopped reading and contacted defense counsel immediately so that defense counsel could address the MDC and the Court about carrying out the Order.

8

The Court could then have determined whether the Government's involvement was necessary -- and information could have been shared with the Government only as necessary. But the imperfect does not equal the unethical. It is the latter that Tavberidze must show, and he has utterly failed to do so.

III. Conclusion

The Court denies the motion for two independently sufficient reasons: Tavberidze has neither demonstrated an ethical violation by the Government, nor shown how any potential violation would prejudice him at trial. Had defendant's counsel made a showing, ex parte or otherwise, that the Cellphone contained material, useful information of which the Government was now aware because of its review of the Letter and Order, counsel might have sought a more limited remedy of simply precluding the Government from introducing any such information at trial. But, doubtless realizing he could not make such a showing, he sought to advance the more extreme, and wholly unsupported, remedy of seeking to disqualify his adverse counsel. It has proved to be a ploy without foundation. Accordingly, the Court hereby denies his motion. The Clerk is respectfully directed to close document 26 on the docket of this case.

SO ORDERED.

New York, NY
June 14, 2024

JED S. RAKOFF, U.S.D.J